Frank R. Bayger, J.
Frank Maisano, the petitioner herein, is currently a detainee at the Hasten Park Community Rehabilitation Center in Buffalo, New York. He is under the supervision of the New York State Drug Abuse Control Commission as a result of judgments of conviction in Kings and Queens Counties in 1973. For some period prior to November 1, 1974 Maisano enjoyed “ halfway house ” status at Hasten Park. This status allowed him to leave the center during the day with the only requirement being that he return each night. On the night of November 4, 1974 Maisano returned to Hasten Park under the influence of either drugs or alcohol. As a result, he was subsequently removed from halfway house status and returned to full residence status. This action was taken after a “ clinical ” conference at the center.
On November 25, 1974 Justice Seth Abbott executed a writ of habeas corpus on behalf of Maisano against Joyce Macaluso, the Director of the Hasten Park Community Rehabilitation Center. In his petition for the writ, counsel for Maisano contends that his client is uoav being detained in resident status illegally. He argues that Maisano did not receive notice of the alleged violation, disclosure of the evidence against him, a hearing before a neutral “ hearing body ” and the right to appear at the hearing with counsel present, all of which are a denial of the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.
In support of his argument counsel for the petitioner relies on two recent decisions, Morrissey v. Brewer (408 U. S. 471 [1972]) and Matter of Ball v. Jones (43 A D 2d 281 [1974]). In J ones the Fourth Department held that a patient at a drug rehabilitation center cannot be removed from aftercare (a patient on “ aftercare ” status is free from a center subject only to periodic reporting requirements) to resident status Avithout first satisfying “ minimum requirements of due process ” *730 (p. 285). The court saw those requirements as necessitating at least a preliminary hearing followed by a later, formal hearing, apprising the patient of the charges against him, offering him the right to have counsel present, present witnesses and offer evidence in his behalf. The formal hearing should be conducted before what the court describes as a neutral hearing body. The Appellate Division reasoned that the change from aftercare status, a state of virtual freedom, back to resident status involved a “ ‘ grievous ’ loss of liberty ” (p. 284) which should not be accomplished Avithout providing basic due process protections.
As was the court in Jones, this court is not persuaded by the State’s argument that removal from “ halfway house ” status is not a significant deprivation of liberty and a “ grievous loss ” to the patient. The reasoning of the Supreme Court in Morrissey (408 U. S. 471, supra), adequately answers this argument. The court pointed out that (p. 481): “ The question is not merely the ‘ weight ’ of the individual’s interest, but whether the nature of the interest is one within the contemplation of the ‘ liberty or property ’ language of the Fourteenth Amendment.” Furthermore, the State’s comparison of “ halfway house ” and aftercare status relies heavily on the “ right-privilege ” distinction — a distinction shown to be without a difference by the Court of Appeals in People ex rel. Menechino v. Warden (27 N Y 2d 376).
It is the opinion of this court that the change from ‘1 halfway house ” status back to resident status does involve a significant deprivation of liberty. While on halfway house status a patient could be employed, in school or engaged in any number of acceptable, beneficial activities. Before that status is changed, a patient should be afforded the minimum requirements of due process outlined in Jones (43 A D 2d 281, supra). Respondent is therefore directed without delay to all action necessary to implement this ruling in accordance with the guidelines outlined in Ball v. Jones (supra).